142 So. 420

## FIRST NAT. BANK OF OPP v. WEAVER et al.

### 4 Div. 621.

Supreme Court of Alabama.
May 12, 1932.

Rehearing Denied June 9, 1932.

C. L. Rowe and J. C. Fleming, both of Elba, and A. Whaley, of Andalusia, for appellees.

Mulkey & Mulkey, of Geneva, Simmons & Simmons, of Opp, and Cabaniss & Johnston, of Birmingham, for appellant.

GARDNER, J.

The will of J. E. Weaver, deceased, was duly admitted to probate June 30, 1930, having been executed September 17, 1927. The First National Bank of Opp, Ala., was appointed as executor of the estate pursuant to the following concluding clause of the will: "I nominate and appoint the First National Bank of Opp, Alabama, as the executor of this will and I direct that it be not required to give bond for the performance of its duty, but it shall be responsible only for fraud or negligence in the performance of its duties."

After the sale of the real estate, the total value of the assets of the estate was something in excess of $3,000. Litigation among the heirs or distributees ensued, in which, however, the executor was without any direct interest, and no question on the appeal following is here involved. Weaver v. First Nat. Bank, 223 Ala. 446, 136 So. 735.

There has been no delay in final settlement chargeable to the executor, and no charge made that the bank as executor has failed in any respect in the proper and diligent administration of the estate. In the decree, entered November 24, 1931, for final settlement, the executor was allowed the usual commissions, amounting to $185.79, but was charged with interest on the funds deposited in its bank amounting to $450.06. To review this inter-

est charge, the executor bank has prosecuted the present appeal.

It appears that the funds of the estate, after having been transferred to the trust department, were placed on general deposit in the commercial department of the bank. Neither the solvency of the bank nor the good faith of the deposit is here questioned. Nor is there insistence there was any conscious use of any of the funds for profit, or the deposit was at all necessary for any cash reserve or other legal requirement, or sufficiently large as related to loans and discounts of the bank to be made the basis for increase therein. The president of the bank stated that the funds were not used or loaned out for its benefit, nor any profit realized therefrom, but were always readily available for estate purposes and distribution. He admitted, however, that all banks usually loan money in excess of their capital, surplus, and profits, and that of consequence a portion of such loaned funds would be from those of the depositors, and it appears that the executor bank was no exception in this respect. The chancellor's finding that the bank was chargeable with interest was based solely upon the fact that the testimony disclosed the "money on general deposit in the bank, subject to check and to the general use and business of the bank * * * constituted a use of the money for its own benefit by the bank, the executor" (citing Collins v. Clements, 199 Ala. 618, 75 So. 165; section 5908, Code 1923), and that, although the executor is a national bank and authorized by the federal law to become executor, yet having assumed the duties as such it submitted itself to the laws of the state, and was liable for the interest charge. The federal statute, however (12 USCA § 248(k), authorizing national banks to act as executors, stipulates that the funds held in trust shall not be used by the bank in the conduct of its business, unless it shall first set aside in the trust department United States bonds or other securities approved by the Federal Reserve Board, and the proof shows the executor bank has complied therewith.

■ ■ This statute is to be construed therefore as inferentially authorizing such use of the funds upon compliance with the provisions therein contained for its safety and protection. Speaking of this statute, the Supreme Court of the United States in Missouri ex rel. Burnes National Bank v. Duncan, 265 U. S. 17, 44 S. Ct. 427, 428, 68 L. Ed. 881, said: "The fact that Missouri has regulations to secure the safety of trust funds in the hands of its trust companies does not affect the case. The power given by the Act of Congress purports to be general and independent of that circumstance and the Act provides its own safeguards. The authority of Congress is equally independent, as otherwise the State could make it nugatory."

■ ■ It results, therefore, as to national banks, any state law containing different and conflicting regulations must yield to the federal statute (In re Turner's Estate, 277 Pa. 110, 120 A. 701), and that the executor bank, having met the requirements of the federal law and authorized thereby to place the funds on deposit, could not properly be held accountable for interest. But a result rested solely upon the character of the executor as a national bank, and which would work any discrimination as against state banks, is properly to be avoided as unsatisfactory, and the decision should, if consistent with sound legal principles, be placed upon broader ground.

■ The principle is well established that the use by the executor of the money of the estate is a breach of duty rendering him liable for interest, and, if he received interest, he must account for it, because he could not be permitted to derive individual profit from the funds in his possession.

In speaking of our present statute (section 5908, Code 1923), the court in Clark v. Knox, 70 Ala. 607, 45 Am. Rep. 93, said: "For interest received, or profit derived, he is liable by the terms of the statute; and if he uses the funds, he is, in any event, liable for legal interest, because the use is, of itself a conversion—a breach of duty. When employed, the profits derived he is required to disclose, and the parties interested may elect to take either the profits or interest at the legal rate."

Our decisions approve a temporary deposit to a trust account in a responsible bank, by a trustee, acting in good faith and with discretion, and relieve such trustee of any liability by reason of the deposit in the event of a failure of the bank. Chancellor v. Chancellor, 177 Ala. 44, 58 So. 423, 45 L. R. A. (N. S.) 1, Ann. Cas. 1915C, 47.

And in Elmore v. Cunninghame, 208 Ala. 15, 93 So. 814, the court declined to extend the above-noted statute, and the principle recognized in Clark v. Knox, supra, to an indirect and mere incidental benefit which the executor may have derived from a deposit of the funds of the estate in a bank in which he was presumably substantially interested as a stockholder, applying the principle of Johnson v. Holifield, 82 Ala. 123, 2 So. 753, though, doubting, as an original proposition, the soundness of the conclusion therein reached.

Our statute was enacted and the principle therein stated recognized long prior to any authorization of banks to act as executors, and none of our decisions relate to the application thereof to such a situation.

In other jurisdictions the few authorities coming to our attention are conflicting. In Hayward v. Plant, 98 Conn. 374, 119 A. 341,

considering this question, it was held that the general rule forbidding a trustee to profit by the use of trust funds in his keeping was inapplicable to the executor bank having the funds of the estate on deposit therein. A like result was reached in Herzog v. Title Guarantee Co., 148 App. Div. 234, 132 N. Y. S. 1114, approved by the New York Court of Appeals in Herzog .v. Title Guarantee Co., 210 N. Y. 531, 103, N. E. 885. See, also, In re People's Trust Co., 169 App. Div. 699, 155 N. Y. S. 639; In re Moore's Estate. 211 Pa. 348, 60 A. 991. As noted to the contrary may be cited St. Paul Trust Co. v. Kittson, 62 Minn. 408, 65 N. W. 74; Enright v. Sedalia Trust Co., 323 Mo. 1043, 20 S.W.(2d) 517.

Our attention has been directed to notes upon the question found in volume XXIII, No. 3 (1923), Columbia Law Review, p. 465 et seq., and volume XLIV, No. 8, Harvard Law Review, p. 1284 et seq., where the authors of the notes entertain conflicting views. See, also, 24 Corpus Juris 77, 78. 'The author of the note in Columbia Law Review, supra, concerning the conclusion reached by the Connecticut court in Hayward v. Plant, supra, said: "The decision in the instant case enables trust companies to continue a practice advantageous both to themselves and to their cestuis. And it is of interest not only because of its importance to the business world, but as an exemplar of the vitality of the principles of our law, of its continuing capacity adequately to meet new situations."

We are much impressed with the author's further comment that as a foundation stone the decision might well be said to rest upon the implied authorization on the part of the testator that the bank deposit the funds with itself in the usual and customary manner. And as applicable to cases of this character we are persuaded this implied authority answers all opposing arguments.

■ The matter should be viewed in the light of common sense and reason. The testator has shown his confidence in the bank by naming it as the executor of his estate, and exempting it from any bond. He presumably knew that the executor could in good faith deposit the funds of his estate in a responsible bank. If the decree here rendered be correct, the executor bank could only escape liability for interest by so depositing in another institution or hoarding away the actual cash in its vaults. It would be unreasonable to assume the testator had either of these contingencies in mind, but, on the contrary, having in view the dual capacity of the bank as a banking institution and as a trustee, we think common sense dictates that the testator intended and so understood at the time that the bank in its capacity as executor would handle the funds of the estate by the usual method of deposit, and without penalty of interest being attached, or, indeed, the fur-

ther penalty of removal under section 5789, Code 1923, for a use of the funds. Otherwise considered, clearly the bank could not have afforded, from a business standpoint, to have accepted the trust, as evidenced by the result of the decree wherein the interest with which it is chargeable is far in excess of the commissions allowed. And, certainly, the bank was not expected to seek out a competing institution for a deposit of the funds. Having the utmost confidence in the bank, as disclosed by the execution of the will, it is but reasonable to assume that the testator anticipated that the bank would deposit, without penalty, with itself, the funds of the estate, and impliedly consented thereto. It would be bordering upon the absurd to assume that he understood that the bank, in order to be relieved from interest charge and the risk of removal, as above indicated, must abandon its own facilities for handling the funds and deposit in some other institution, or else hoard the same.

Moreover, we are of the opinion that under the facts here disclosed there appears no self-dealing or advantage or profit within the condemnation of the rule of the decisions. Any benefit derived was wholly indirect and incidental, and it would seem that the case differs from that of Elmore v. Cunninghame, supra, only in degree, and not in kind.

We conclude, therefore, that the mere routine general deposit in good faith of the funds of the estate by an executor in its solvent bank does not, without more, constitute any such use thereof by the executor as to subject it to a liability for interest, and that the nomination of the bank as executor in the will indicates implied authority on the part of the testator that the funds may be so deposited without penalty.

We have hereinbefore indicated our view that a different case would be presented in the event of any fact which might jeopardize the safety of the funds, as the insolvency of the bank, or where the funds were necessary and used to provide cash reserve, or any evidence of negligence, or other contingencies not here necessary to note, for the reason that none of them is present in the instant case, and we expressly confine the decision as above indicated.

The larger portion of the cash in the bank at the death of the testator was in the savings department at 4 per cent. interest. Upon appointment as executor this fund was transferred to the trust department of the bank and deposited then in the commercial department. The action pursued was in accord with the federal statute, and no legal rights invaded. It was not within the scope of the executor's duty to make interest for the estate, but to collect all assets as speedily as possible, pay all allowed claims, and have

the funds ready for distribution at the expiration of the appointed time. Clark v. Knox, supra; In re Estate of Schofield, 99 Ill. 513.

It is but fair to the bank, however, to state the record bears indication that, had the register's charge of only 4 per cent. stood, there would have been no objection, as the exceptions once filed by the bank to the report were withdrawn. But, even so, under the law, such would have been only a gratuity.

For the reasons stated, we conclude the learned chancellor erred in charging the executor bank with interest. The decree will accordingly be here reversed, and the cause remanded. The costs incident to this appeal will be paid by the executor out of the funds of the estate, for which it will be duly credited upon final settlement thereof.

Reversed and remanded.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.