CITY BANK FARMERS TRUST COMPANY (Formerly Known as THE FARMERS LOAN AND TRUST COMPANY), as Trustee, etc., Plaintiff, *v.* DOROTHY GREEN and Others, Defendants.

Supreme Court, Special Term, New York County, February 19, 1936.

*Mitchell, Taylor, Capron & Marsh [Benjamin Nassau of counsel],* for the plaintiff.

*White & Case [Chester Bordeau of counsel],* for the defendant Bankers Trust Company, executor.

*Hayes, Nottingham & Combs [A. H. Combs of counsel],* for the defendants Jane Green Carrott, E. Margaret Green Howard, Josephine Green Ordway, Mary Green Ream and Elizabeth Green Talbott.

*Russell H. Robbins,* for the defendant Ellen P. Green.

*Ross, Dodge & Miller [William J. Dodge of counsel],* for the defendant Dorothy Green.

CHURCH, J. This is an action by City Bank Farmers Trust Company for the judicial settlement of its account as trustee of an *inter vivos* trust and for a construction of the trust instrument.

The trust was created in 1921 as part of a separation agreement between the late John R. Green and his first wife, the defendant Dorothy Green. In and by the agreement (Plaintiff's Exhibit 1), a copy of which is annexed to the complaint, John R. Green and Dorothy Green agreed, among other things that it should be lawful for them thereafter to live separate and apart, and Dorothy Green agreed to accept the provisions of that instrument for her benefit " in full satisfaction and discharge of any liability of the party of the first part [John R. Green] to support or maintain her, and covenants and agrees that she will not call upon the party of the first part for any payment upon the ground of their relation as spouses." No power of revocation was reserved.

The provisions for the benefit of Dorothy Green are set forth in paragraph third of the agreement, in and by which John R. Green transferred certain property to the plaintiff: " In trust nevertheless to hold and/or sell and invest and reinvest the proceeds thereof and collect the income therefrom, and after deducting its commissions and all the other expenses, including any Federal State and municipal taxes that may be imposed on the income or principal of the trust created herein, or upon the party of the third part [Dorothy Green] as recipient of such income, to pay to the party of the third part during her natural life, or until her remarriage, so much of said income in equal semi-monthly installments, as shall not exceed the sum of six thousand dollars absolutely free and clear annually, any balance of said net income remaining in the hands of the trustee in excess of said six thousand dollars absolutely free and clear as herein provided for, to be paid to the party of the first part [John R. Green], his executors or administrators as the case may be."

The agreement further provided for the distribution of the remainder upon the death or remarriage of Dorothy Green after the death of John R. Green, as follows: " If the party of the third part [Dorothy Green] shall survive the party of the first part [John R. Green], then and in that event upon the death of or remarriage of the party of the third part this trust shall cease and come to an end, and the party of the second part [plaintiff] shall account to such person or persons as may be appointed by the last will and testament of the party of the first part or in default of appointment, to his executors or administrators."

In 1924 the above-mentioned agreement was amended by providing for the withdrawal of certain property from the trust, and the payment of $38,000 to Dorothy Green in the event of her remarriage; otherwise, the provisions for the distribution of the principal of the trust upon the death or remarriage of the defendant Dorothy Green remain as heretofore, the new provision reading as follows: " If the party of the third part [Dorothy Green] shall survive the party of the first part [John R. Green] then and in that event, upon her death or remarriage, this trust shall cease and come to an end and the party of the second part [plaintiff] shall account to such person or persons as may be appointed by the last will and testament of the party of the first part, or in default of appointment, to his personal representatives, after deducting the said sum of $38,000 to be paid to the party of the third part in the event of her remarriage."

Subsequently to the execution of this amendment, an interlocutory judgment of divorce between Dorothy Green and John R.

Green was granted in New York county on February 19, 1924. This decree became final as, of course, on May 23, 1924 (Ellen P. Green's Exhibit A).

On May 27, 1924, John R. Green married the defendant Ellen P. Green.

John R. Green died in November, 1933, a resident of New York county, leaving a will which was duly admitted to probate by the Surrogate's Court of New York county. The Bankers Trust Company is the executor. The decedent left the defendant Ellen P. Green as his widow. He had no issue.

By clause second of the will he stated that he intentionally made no provision for his wife, Ellen P. Green, and he expressly directed that she shall not share in his estate in any way.

The will bequeaths no general or specific legacies, but disposes of the residue of his estate in the following terms:

" *Third.* All the rest, residue and remainder of my estate, both real and personal, of whatsoever nature and character and wheresoever situated, of which I shall die seized or possessed or to which I shall in any way be entitled at the time of my death, or over which I may have any power of appointment or disposition by will, deed or otherwise, I direct my executor to divide into as many equal shares as I may have sisters me surviving and sisters who having predeceased me shall have left issue me surviving, and I give, devise and bequeath the same as follows:

" (1) I give, devise and bequeath one of such shares to each of my sisters, Jane Green Carrott, E. Margaret Green Howard, Josephine Green Ordway, Mary Green Ream and Elizabeth Green Talbott, who survive me, absolutely and forever.

" (2) I give, devise and bequeath one of such shares to the issue of each sister who having predeceased me shall have left issue me surviving, such issue to take *per stirpes* and not *per capita,* absolutely and forever."

All of the sisters of the decedent named in paragraph (1) of clause third of the will survived the decedent. Hence, the provisions of paragraph (2) of clause third are inapplicable.

The widow, Ellen P. Green, has established in the Surrogate's Court her right to take one-half of the decedent's estate under section 18 of the Decedent Estate Law (Ellen P. Green's Exhibit B).

The defendant Dorothy Green, the life beneficiary of this trust, has never remarried. Accordingly, the trust for her benefit still continues. In connection with the administration of the estate of John R. Green, however, it has become necessary to determine the persons in whom the remainder in this trust has vested. The

sisters of the decedent contend that this remainder interest has vested directly in them by virtue of the exercise of the power of appointment, and passes to them under the trust instrument and not under the will. The widow, Ellen P. Green, and the executor contend that the remainder interest in this trust forms part of the estate of John R. Green, payable to the executor. In such case, of course, the widow's right of election to take one-half of the decedent's estate as on intestacy would apply to the remainder interest in the trust.

The decedent during his lifetime also created a trust with the Bankers Trust Company, under which he reserved the income to himself for life and directed the disposition of the principal upon his death to such persons as he should appoint by his will, or in the absence of such appointment, and if he died without leaving descendants (as is the case), to his sisters (Plaintiff's Exhibit 4). The principal of this trust as of the date of the decedent's death was in excess of $200,000 (Bankers Trust Company's Exhibit 2).

The principal of the Bankers Trust Company trust is presently distributable, whereas, as we have seen, the principal of the Dorothy Green trust will not become distributable until the death or remarriage of Dorothy Green.

The decedent in his will specifically provided that all estate taxes shall be paid out of his residuary estate. This provision is contained in clause sixth of the will, which reads as follows: " *Sixth.* I direct my Executor to pay out of my residuary estate any and all inheritance, succession, estate or transfer taxes which may be levied, imposed or assessed in any jurisdiction against my estate, or the legacies and devises hereinbefore set forth."

The executor, however, alleges that it has insufficient funds in its hands for the payment of New York and Federal estate taxes, and it has requested the plaintiff to pay from the principal of the Dorothy Green trust such proportionate part of the estimated New York and Federal estate taxes due from said estate as the value of the remainder in the trust bears to the amount of the decedent's entire taxable gross estate.

By the pleadings questions are raised: (1) As to who is entitled to the income of the trust in excess of the $6,000 annually payable to Dorothy Green; (2) who is entitled to the principal of the trust, subject to the beneficial interest for life of Dorothy Green (or until her remarriage); and (3) whether the plaintiff, City Bank Farmers Trust Company, as trustee of this trust, should be required to pay any part of the Federal and New York estate taxes payable on the estate of John R. Green.

City Bank Farmers Trust Company, as trustee, held at the time of John R. Green's death, certain income of the trust which was excess income over and above the amount required to pay the $6,000 out of income to Dorothy Green for the fiscal year of the trust during which the death of John R. Green occurred. There was also certain income accrued at the date of death of John R. Green which was not collected by the trustee until after his death. This income, in the total amount of $2,618.10 approximately, had vested in John R. Green at the time of his death. It is income which belonged to him during his lifetime, but which had not been paid over to him before he died. Such income is not subject to any power of appointment by will by John R. Green. The provisions of the trust indenture referring to any power of appointment by will are limited to the principal of the trust. Under the provisions of section 204 of the Surrogate's Court Act, the executor of the estate of John R. Green is entitled to that part of the income of the trust in excess of the sum of $6,000 apportioned to the date of death of John R. Green.

There is no wording of the trust indenture which can be considered an express stipulation that such apportionment should not be made. The exact amount of this income should be ascertained after the trustee files its account of proceedings herein.

By reason of the death of John R. Green no change is made in the payments of $6,000 annually to Dorothy Green, but the term of the trust continues for the balance of her life or until she remarries. All mention in the trust indenture of any power of appointment by will by John R. Green is limited to the principal of the trust and is to take effect at the termination of the trust. Accordingly, after the death of John R. Green, the payments of income in excess of $6,000 should be continued by the trustee as formerly in accordance with the terms of the trust indenture. The excess income is payable " to the party of the first part, his executors or administrators, as the case may be." Any such excess income after the death of John R. Green should, therefore, be paid to the executor of his will during the balance of the term of the trust. From the testimony presented at the trial it appears that for the present this excess income, if there is any excess income at all, will not be large. As over two years have elapsed since the date of decedent's death, the question is not an academic one. The account of the trustee will show whether or not there is any such excess income during the last two years. In any event, in order to ascertain the assets of the estate of John R. Green, a determination of this question at the present time is necessary.

To construe the trust agreement to authorize the trustee to accumulate any excess of income over $6,000 in any one year to provide against possible deficiencies in any future years would not only do violence to the language of the instrument, but also would sanction an accumulation illegal under section 16 of the Personal Property Law.

The testator in his will named his five sisters to receive the principal of the trust and they thereby take directly under the trust agreement as if they had been expressly named therein as the beneficiaries. The remainder has vested in right in the sisters, but possession is postponed until the death or remarriage of Dorothy Green. The principal of the trust is not an asset of the estate of John R. Green and his executor is not entitled to receive such principal from the plaintiff trustee. If the testator had intended the principal of the trust to pass into his estate, he could have expressly so provided in his will or by failing to appoint by his will it would have become a part of his estate. His intention is determinable as a matter of law from the trust agreement and his will. The testimony of Saurel as to a conversation with the testator at the time of the making of his will is immaterial and accordingly stricken out and disregarded.

It is not disputed that decedent validly exercised the power of appointment. In his will he expressly devised and bequeathed to his sisters all property over which he had the power of appointment. (Pers. Prop. Law, § 18; Real Prop. Law, § 176.)

The law is settled that the persons named in the execution of a power of appointment take under the authority of the instrument by which the power was created and with the same effect as if such persons had been named in such instrument. John R. Green in exercising the power of appointment in his will was a mere conduit. Such exercise of the power gives no testamentary character to the disposition of the trust fund at issue, as it is not the property of the decedent. The source of title of the appointees of the power, the defendant sisters, is the trust agreement which raised the power and not the will of decedent.

"An estate," says Chancellor KENT (4 Kent's Comm. 337), "created by the execution of a power takes effect in the same manner as if it had been created by the deed which raised the power. The party who takes under the execution of the power, takes under the authority and under the grantor of the power, whether it applies to real or personal property, in like manner as if the power and the instrument executing the power had been incorporated in one instrument."

In *Matter of Harbeck* (161 N. Y. 211), the Court of Appeals stated that this rule of law long ago became engrafted upon the body of the law.

In *Genet* v. *Hunt* (113 N. Y. 158), a woman about to marry conveyed property to trustees to pay the income to her during her coverture, and in case of her death during coverture to convey the property to such persons as she might direct by will. She made a will giving the property upon a trust that suspended the power of ·alienation during two lives in being. The question was whether this constituted a valid disposition of the property under the law against perpetuities. It was valid if the property could be regarded as her property and as transferred by her will, but if it was held to be the property of the grantor ·in the trust deed, and as passing under that deed, then it was invalid, because under the latter it would suspend the power of alienation during three lives, two of which were not in being when the trust deed went into effect. It was held that the source of title of the appointees of the power was the trust indenture in which the power was raised and not the will in which it was exercised, and, therefore, there was an unlawful suspension.

In *Herzog* v. *Title Guarantee & Trust Co.* (210 N. Y. 531, 532) the decedent created a trust during his lifetime in which the income was payable to himself for life, and after his death the income was to be paid to the persons designated by his last will and testament. He exercised the power of appointment in his will. The court in construing the will and also the trust deed remarked as follows: " There is contained ' in the will a clear designation of the persons to whom is to be paid the net income derived as well from the Central Park Apartment Buildings as from the remainder of the estate, and it becomes the duty of the trustee named in the trust deed to pay over the net income in equal shares to the testator's children, who will thus receive it, not by virtue of the will, but by virture of the trust deed in which the gift itself was contained, the will merely designating the beneficiaries.' "

In *Guaranty Trust Co.* v. *Halsted* (245 N. Y. 447), the Court of Appeals held that the cases of *Genet* v. *Hunt* and *Herzog* v. *Title Guarantee & Trust Co.* (*supra*) were conclusive upon the point that the appointees under the exercise of a power of appointment take under the trust indenture which raised the power and not the will by which it was exercised.

In *Bishop* v. *Bishop* (257 N. Y. 40, at p. 51), Chief Judge CARDOZO said as follows: " The appointment under the power is to be read into the will by which the power was created and the validity of the gift determined as if the provision thus incorporated had been there from the beginning."

In *Matter of Crosby* (136 Misc. 688, 689), Surrogate Foley of New York county stated as follows: " To determine the validity of the appointment, the will of the donee of the power must be read into the instrument by which the power was granted. (*Genet v. Hunt*, 113 N. Y. 158; *Fargo v. Squires*, 154 id. 250, 259.) But, if the appointment is valid, the fund passes directly from the trustee named in the deed, to the appointees. (*Matter of Canda*, 197 App. Div. 597, 602.) "

Thus here the five defendant sisters, as the appointees of the power, take directly under the trust deed as if they had been expressly named therein. The will merely designates the sisters as beneficiaries and in so far as the principal of the trust is involved it does nothing else. It cannot be said that such property passes through the estate. To hold that it does is to ignore a proposition of law which has been settled since long before the time of Chancellor Kent.

The fact that the testator created the trust in his lifetime and reserved to himself in the trust agreement, he not being the sole beneficiary, the power of appointment by will, is no different than if a third person had created the power and made the testator the donee of it.

At the time of the expiration of the estate for life or until remarriage of Dorothy Green, the principal of the trust will not be payable to the executor of John R. Green for distribution to his sisters, but the plaintiff trustee will be required by law to pay it directly to them.

The fact that decedent, in designating the sisters to take the trust property, directed his executor to divide this property among the sisters, is nugatory in so far as giving the executor the right to possession of it.

In *Herzog v. Title Guarantee & Trust Co.* (210 N. Y. 531, 532), decedent exercised the power of appointment in his will and directed the trustees under his will to pay over the net income from the property to his children. The Court of Appeals held that as the beneficiaries take by virtue of the trust deed, the net income should be paid directly to them by the trustee under the trust deed and not to the trustees under the will. The court stated as follows: " This is a proper interpretation of the will and deed and accordingly the net income should be paid directly to the beneficiaries and not to the trustees under the will to be by them distributed."

In *Matter of Beaumont* (147 Misc. 118, 124), the donee of the power directed her executor to divide the property over which she had the power of appointment and other property into certain parts, and she thereupon devised and bequeathed the various parts.

Surrogate DELEHANTY, of New York county, held that the appointed property did not pass in the hands of her executors. The surrogate remarked as follows: " The executors of Jeanette D. Beaumont originally asserted that the appointed property should pass into their hands for distribution. This position was untenable. The property of Lee E. Beaumont passes by his will to the appointees of the donee. (*Matter of Stewart*, 131 N. Y. 274, at p. 281 [citing 4 Kent Comm. 338]; *Matter of Harbeck*, 161 N. Y. 211.) "

There is no ambiguity in the will, taken as a whole, and the general testamentary scheme indicates no intent to pass the principal of the trust through the estate or executor of the decedent.

The principal of the trust fund being no part of the estate of John R. Green, but passing directly to his sisters under the trust agreement, it would seem clearly that this surviving spouse would not be entitled to share in it under section 18 of the Decedent Estate Law by virtue of her election to take against his will.

The court will not direct the plaintiff trustee to pay over any of the income or principal of the trust to the executor for the purpose of paying estate taxes on the remainder interests of the decedent's sisters. The life beneficiary of the trust, for whose benefit and protection the trust was primarily created, should not suffer a reduction in her annual income of $6,000, which the separation agreement was intended to assure to her, in order that the remaindermen should be free from the burden of paying interest on estate taxes imposed on the remainder estate, and not upon the life estate of Dorothy Green. In short, the tax exempt income of the life beneficiary should not be reduced in order to relieve the taxed remainder estate from paying interest.

The executor refers to the following wording of the trust indenture as indicating an intention that the plaintiff trustee should pay the estate taxes: " and after deducting its commissions and all other expenses, including any Federal, State and municipal taxes that may be imposed on the income or principal of the trust created herein." This provision, however, clearly has reference to payments of taxes out of the income of the trust. This provision has no reference to estate taxes. It refers to taxes on the income or principal of the trust. Estate taxes are imposed upon the transfer of the property — and not upon the property itself. (See Revenue Act of 1926, § 301 [a]; 44 U. S. Stat. at Large, 69; U. S. Code, tit. 26, § 410; Tax Law, § 249-n.)

Jurisdiction of the assessment and collection of the New York and Federal estate taxes is by statutes invested in tribunals other than this court. To prevent the accumulation of penalties the executor or trustee, respectively, may avail itself of the provision

of the statutes relating to the payment or postponement of payment of taxes, with or without indemnity from the five sisters of the decedent who primarily are interested as the beneficiaries in remainder. The court will not at this time order a voluntary payment from the plaintiff trustee to the defendant executor, which latter has not paid the taxes.

The court would not be justified in depriving the income beneficiary of a large part of her $6,000 annual income in any particular year by applying such income to the payment of costs of this accounting. Such costs are not an ordinary expense incurred annually in connection with the trust, but are an extraordinary expense. Although the trust was created in 1921, this is the first time the trustee's accounts have been judicially settled. The payment of the expenses of this action should be charged to principal and not to income. (*Matter of Petremont*, 213 App. Div. 318; affd., no opinion, 241 N. Y. 586; *Chisolm* v. *Hamersley*, 114 App. Div. 565.)

Submit proposed findings of fact, conclusions of law, decision, and interlocutory decree providing for a referee to take and state the account and to report to the court.