[1] Reported in 277 N.W. 899.
Respondent, a corporate trustee, petitioned the district court, pursuant to L. 1933, c. 259 (3 Mason Minn. St. 1936 Supp. § 8100-11 to 8100-16), to construe the investment provisions of the trust, authorize the investment of trust funds in corporate stocks, and *Page 189 
direct the trustee to invest in same pursuant to such construction. The provision of the will, pursuant to which the trust was created, so far as here material, provides:
"The trustee shall invest and reinvest all principal cash in the trust fund in first mortgages on improved real estate, in municipal or corporation bonds or in any other form of income bearing property, except real estate, but in selecting such investments, the trustee shall exercise its judgment and shall have first regard for the safety of the principal of the trust rather than for a high rate of income.
"The trustee shall be under no obligation to change the investments which come into its hands from my estate, on account of the character thereof, but only when it deems it advisable to do so because of changing conditions and after careful investigation and consideration."
The court below held that the trustee was not authorized by the terms of the trust to invest trust funds in corporate stocks and decreed that the words " 'first mortgages on improved real estate, in municipal or corporation bonds or in any other form of income bearing property, except real estate' as such words are used in * * * of the last will and testament of Robert Fremont Jones, deceased, be and they hereby are construed as excluding corporate stocks. * * *" The beneficiaries of the trust appeal.
That the trustee may invest trust funds in corporate stocks is predicated upon the grounds (1) that the will creating the trust in the instant case, and (2) the statutes governing corporate trustees, authorize such investment.
1. In construing the will the important thing is to ascertain the intention of the testator. All provisions should be harmonized and given meaning if possible. Authorization to invest in corporate bonds excludes other forms of corporate investment. The application of the rule of ejusdem generis
would confine the expression "any other form of income bearing property" to property of the *Page 190 
same kind enumerated, namely, mortgages, bonds, etc. This would include governmental obligations and many other forms of property. But it is contended that the rule does not apply because of the exception of real estate and that this exception clearly indicates that authority is given to invest in all kinds of income bearing property except real estate. If this construction were adopted it would nullify the express directions as to investments in first mortgages and bonds. It would permit investment in second mortgages, the purchase of contracts for deed and other forms of investment impliedly prohibited by the powers given with respect to investment in bonds and first mortgages on improved real estate. This certainly could not have been the intention of the testator. It is more reasonable to believe that inasmuch as the power to invest in mortgages was confined to first mortgages on improved real estate and did not cover unimproved real estate, that the testator, in order to make sure that there would be no investments in real estate, added the exception. By giving the exception this construction, full meaning is given to the other provisions of the will. The court below was correct in holding that the will does not authorize the trustee to invest in corporate stocks.
2. Even though the will impliedly excludes corporate stocks, it is contended that the will contains no specific directions as to investments in corporate stocks, and, that being true, the trustee must look to the statute for directions. The contention is that under the statute the trustee has discretionary power to so invest.
The statute, 2 Mason Minn. St. 1927, § 7735, provides that a corporate trustee may invest in authorized securities if the terms of the trust contain no specific directions as to investment and that it shall invest according to the directions, if there be any. The question is one of statutory construction. Ordinarily, the word "may" is directory and "shall" is mandatory in meaning, but not always so. Henkel v. Pioneer Sav. Loan Co. 61 Minn. 35, 63 N.W. 243. The argument is that the statute observes and adopts the distinction naturally attached to these words to denote the obligatory character of its respective provisions. From this premise, the conclusion *Page 191 
claimed is that in § 7735[2] and § 7714[3] the word "may" is used in a directory sense, permitting the trustee at its option and discretion to invest in authorized securities, and that "shall" is used in § 7738[4] and § 7714, directing the investment of accumulations by trustees and funds of savings banks, respectively, as obligatory without any discretion.
Provisions which are mandatory in form are often held to be directory, and those which are directory in form are often held to be mandatory because such words as "may," "shall," "must," and *Page 192 
"will" are often used without discrimination. All of them are elastic and frequently treated as interchangeable. 7 Fletcher, Cyc. Corp. (Perm. ed.) pp. 779-780, § 3647, notes 96 and 97; Gilfillan v. Hobart, 35 Minn. 185, 28 N.W. 222; Henkel v. Pioneer Sav. Loan Co. 61 Minn. 35, 63 N.W. 243; Hunter v. City of Tracy, 104 Minn. 378, 116 N.W. 922; Carlson v. Township of Elmo, 141 Minn. 240, 169 N.W. 805; Champ v. Brown, 197 Minn. 49,266 N.W. 94.
A trust company is a financial corporation. 2 Mason Minn. St. 1927, § 7635. In the statutes governing such corporations the words "may" and "shall" are used indiscriminately. Hence the use of the one word or the other is without significance. The statute defining the powers and duties of state banks (2 Mason Minn. St. 1927, § 7663) uses the word "may" throughout. It provides that a state bank may exercise certain powers and in the seventh subdivision reads in part: "It may invest its funds in authorized securities as defined by law," etc. The statute regulating the powers and duties of building and loan associations (2 Mason Minn. St. 1927, § 7762) also uses the word "may" throughout and provides that such associations "may make loans on real estate security," etc., and "may purchase" and "may acquire" property as defined in the section. The word "may" is used with respect to the powers and duties of state banks, trust companies, and building and loan associations, and the word "shall" is used with respect to savings banks and the investment of accumulations by trust companies. It can hardly be thought that the duty to observe the provisions of the statute is less obligatory upon state banks and building and loan associations than it is upon savings banks. Nor can the same language when used with respect to trust companies be held less imperative than when used with respect to state banks and building and loan associations. The use of the word "may" is not decisive. The meaning of the language may be sought by such aids as the subject matter of the statute, its objects, and history. Bender v. City of Fergus Falls, 115 Minn. 66,131 N.W. 849; State ex rel. Birkeland v. Christianson, 179 Minn. 337,345-346, 229 N.W. 313; Bemis Bro. Bag Co. v. Wallace, 197 Minn. 216,266 N.W. 690. *Page 193 
3. The fact that §§ 7735 and 7714 are grants of corporate power is determinative not only of the powers and capacities granted to a corporate trustee, but also of those withheld and denied. In considering this aspect of the case, we lay aside entirely the fiduciary character of the powers granted. We consider only the question of power. Trust companies were authorized by L. 1883, c. 107, the provisions of which, with some amendments not here material, are found in our present law. The statute grants to trust companies specific powers, prescribes the mode of their exercise with particularity, and limits them to the granted powers. Provision is made for public supervision. They may be liquidated for violation of charter or conduct of the business in any unsafe or unauthorized manner. Section 9 of c. 107 in eight subdivisions enumerates the powers and specifies the mode of their exercise. In the original act, the headnote indicates that the section refers to corporate powers. In G. S. 1894, the section (2849) is entitled "Corporate Powers." The present statute, § 7735, is derived from the sixth subdivision of § 9[5] of the original act and is the power of investment. Section 7714, providing authorized securities, was adopted in the *Page 194 
revision of 1905 (R. L. 1905, § 3022) to supplant a section of the original law and a section of the act relating to savings banks.
The controlling principle is that a corporation has only the powers and capacities expressly granted to it by law, or incidental to its existence or necessary to the exercise of its express powers. 2 Dunnell, Minn. Dig. (2 ed. Supps. 1932, 1934) § 1998; Rochester Ins. Co. v. Martin, 13 Minn. 54 (59); Bank of Augusta v. Earle, 13 Pet. 519, 587, 10 L. ed. 274; Central Transportation Co. v. Pullman's Palace Car Co.139 U.S. 24, 11 S.Ct. 478, 35 L. ed. 55. Unlike an individual, it has no natural rights or capacities. 14A C. J. p. 246, § 2075, note 67. A natural person can do anything not forbidden by law. A corporation can do only what is expressly or impliedly authorized by its charter. 14a C. J. p. 249, note 74; 7 R.C.L. p. 538, § 521, note 2; New York F. Ins. Co. v. Ely,5 Conn. 560, 13 Am. D. 100.
A trust company has only the powers which the statute grants. St. Paul Tr. Co. v. Strong, 85 Minn. 1, 88 N.W. 256; State v. Barnes, 108 Minn. 230, 122 N.W. 11; Shearer v. Barnes,118 Minn. 179, 136 N.W. 861; Federal Land Bank v. Crookston Tr. Co. 180 Minn. 319, 230 N.W. 797; Bowden v. Citizens L. T. Co. 194 Minn. 113, 259 N.W. 815; Kavanaugh v. Commonwealth Tr. Co. 64 Misc. 303, 118 N.Y. S. 758; People v. Knapp, 147 App. Div. 436,132 N.Y. S. 747; Perkins v. Fuquay, 106 Fla. 405,143 So. 323. Where the grant of power prescribes the particular mode or manner of its exercise, the statute or charter is the enabling act not only in regard to the power conferred, but also as to the mode prescribed for exercising the power. Farmers Mechanics' Bank v. Baldwin, 23 Minn. 198,23 Am. R. 683; 7 R.C.L. pp. 538, 539, § 521.
Chief Justice Marshall stated the rule in language which has been quoted many times in Head v. Providence Ins. Co. 2 Cranch, 127, 167, 2 L. ed. 229, as follows:
"Without ascribing to this body, which in its corporate capacity, is the mere creature of the act to which it owes its existence, all the qualities and disabilities annexed by the common law to ancient institutions of this sort, it may correctly be said to be precisely *Page 195 
what the incorporating act has made it, to derive all its powers from that act, and to be capable of exerting its faculties only in the manner which that act authorizes."
A corporate trustee is required by statute to transact its business in conformity to the laws relating to trust companies. 2 Mason Minn. St. 1927, § 7441(4). The specific provisions in the statute for the exercise of the power of investment determine the duty of the trustee. The trustee is controlled by all the restrictions which the statute imposes. It can exercise the power only as the statute directs. We regard this question as settled by our decision in St. Paul Tr. Co. v. Strong,85 Minn. 1, 88 N.W. 256. In that case we held that it is the duty of a corporate trustee to invest trust funds in accordance with the statute and that the statute specifies the character of securities in which trust funds are to be invested. That case was decided prior to R. L. 1905. At that time a corporate trustee was permitted to invest only in certain bonds, and in notes secured by mortgage or deed of trust upon unencumbered real estate worth double the amount of the obligation secured.
If a corporation is authorized to invest in a particular manner, it must exercise the power of investment within the express terms of the authorization. St. Paul Tr. Co. v. Strong,supra; New York F. Ins. Co. v. Ely, 5 Conn. 560, 13 Am. D. 100; New York F. Ins. Co. v. Ely, 2 Cowen (N.Y.) 678; Pratt v. Short, 79 N.Y. 437, 35 Am. R. 531; Nassau Bank v. Jones,95 N.Y. 115, 47 Am. R. 14.
The enumeration of the powers which a corporation may exercise excludes all other powers. Powers not conferred are withheld and denied just as much as if the legislature used express negative language for that purpose. Rochester Ins. Co. v. Martin, 13 Minn. 54 (59); Central Transportation Co. v. Pullman's Palace Car Co. 139 U.S. 24, 11 S.Ct. 478,35 L. ed. 55. In St. Paul Tr. Co. v. Strong, supra, we definitely held that the enumeration of the investments which a corporate trustee may make excludes other investments. In Pratt v. Short,79 N.Y. 437, 442, 35 Am. R. 531, decided in 1880, three years prior to the enactment of c. 107, the question was whether a safe deposit and savings institution, authorized to loan *Page 196 
its capital and funds as restricted by the statute, had power to engage in the business of discounting commercial paper. The court laid down the rule which controls in all cases of this kind: "* * * the mode of investment is prescribed in the eleventh section, and the specification of the particular securities in which it should be lawful for the corporation to invest, operates by implication to restrain and prohibit investments in any securities other than those particularly enumerated." The section authorizing investments in that case provided that "it shall be lawful" for the corporation to make such investments. Similar enumerations in permissive language were held to be exclusive in New York F. Ins. Co. v. Ely, 2 Cowen (N.Y.) 678, and New York F. Ins. Co. v. Ely,5 Conn. 560, 13 Am. D. 100. In New York F. Ins. Co. v. Ely, 2 Cowen (N. Y.) 678, 700, the court pointed out that the statute expressly provided that "it shall be lawful" for the corporation to invest its capital in certain securities, and said: "thus by the strongest implication, prohibiting any other mode of investment, and destroying the inference which might have resulted from the absence of all regulations on the subject."
The contention that the trustee may follow the statute at its option and in its discretion invest in securities not enumerated in the statute is equivalent to saying that a corporation possessing restricted power of investment may invest in any manner not expressly prohibited by its charter. This contention was effectually answered in New York F. Ins. Co. v. Ely, 5 Conn. 560, 572, 13 Am. D. 100, as "an inversion of the unquestionable principle, that such an incorporated company has no rights, except such as are specifically granted, or necessarily implied, and directly contravenes the undeniable position, that the act of incorporation is an enabling act; the law of its nature; giving it all the powers it possesses." This principle has been applied commonly to banks. The rule is that a statutory enumeration of the powers which a banking corporation may exercise excludes all other modes of banking. 7 Am. Jur., Banks, § 157; People ex rel. Nelson v. Wiersema State Bank, 361 Ill. 75, 197 N.E. 537, 101 A.L.R. 501. *Page 197 
The principle that a corporation has only the powers granted to it, and that those powers must be exercised in the manner prescribed by the statutes conferring them, goes to the very power and capacity of the trustee to act at all. It is not a question of discretion, it is a question of power, and there can be no discretion where there is no power. To hold that a statute permitting a corporate trustee to invest only in authorized securities confers discretion such as is claimed here, it would be necessary to construe that a restricted power of investment is really an unlimited power of the same kind — that to restrict a power, by that very fact makes the power unrestricted. A corporate trustee, under the guise of exercising discretion as to the mode of investment, will not be permitted to take unto itself powers of investment withheld and impliedly denied and prohibited. Such a trustee must invest only in authorized securities as permitted by statute.
4. The construction that a corporate trustee is limited, in the absence of express directions, to investments authorized by statute, is confirmed by the reënactment of the original statutes in substance and the enactment of other provisions supporting such an inference, in R. L. 1905. Although c. 107 was amended several times, § 9, subd. sixth, was carried forward through G. S. 1894 (§ 2849-sixth), unchanged until 1905. In the revision, the old statute (G. S. 1894, § 2844) enumerating the authorized investments for corporate trustees, was dropped entirely. A new section (R. L. 1905, § 3022) was adopted, providing a list of authorized securities for all cases under the revised laws. This was taken from a section of the old law which listed the investments of savings banks (G. S. 1894, § 2562, as amended), and provisions were inserted therein directing that savings banks shall and that corporate trustees may invest in such authorized securities. The mandatory "shall" is carried over from the old statutes relating to savings banks and hence is without significance so far as concerns corporate trustees. A new section (§ 3040) was adopted for corporate trustees in which the substance of the original statute, L. 1883, c. 107, is reënacted in terms, with the exception that the first clause was rewritten to state that corporate trustees may invest trust funds in "authorized *Page 198 
securities" and the addition of a clause authorizing a corporate trustee "in its discretion" to retain investments coming into its hands as part of the trust estate. No change of substance was effected by the first clause except that authorized securities were adopted for corporate trustees instead of those specified under the old law. Chapter 107 was expressly repealed by R. L. 1905, but the section adopted in the revision, § 3040, was practically the same as § 9, subd. sixth, of c. 107. The new provisions are continuations of the old ones. In State v. Barnes, 108 Minn. 230, 122 N.W. 11, it was held that the reënactment by R. L. 1905 of the provisions of L. 1883, c. 107, in practically the same language, was a continuation of the provisions of the old statute. The report of the state commission which prepared R. L. 1905 makes such an intention clear.[6]
The judicial construction of a statute becomes a part thereof as if it had been written into the statute originally. 6 Dunnell, Minn. Dig. (2 ed. Supp. 1937) § 8936b; Roos v. City of Mankato, 199 Minn. 284, 271 N.W. 582. The statute was reënacted with the known and settled construction which it had previously received so *Page 199 
that the construction placed upon it in St. Paul Trust Co. v. Strong, supra, was adopted as a part thereof. Wenger v. Wenger,200 Minn. 436, 274 N.W. 517; Heald v. District of Columbia,254 U.S. 20, 23, 41 S.Ct. 42, 43, 65 L. ed. 106.
In the rewriting and reënactment of the statutes governing financial corporations, a trust company is defined as: "a corporaation under like [public] control, authorized, within prescribed limitations, to act as a safe deposit company, trustee or representative for or under any court, public or private corporation, or individual, and as surety or guarantor." R. L. 1905, § 2967. The "prescribed limitations" here referred to are the enumerated powers of a corporate trustee and the restrictions upon the particular mode or manner in which they may be exercised. It includes the prescribed limitations on the power of investment.
The insertion of a provision that a corporate trustee may "in its discretion" retain any investment coming into its possession in any fiduciary capacity clearly indicates that the duty of a corporate trustee is otherwise to invest in authorized securities according to statute. In that sense the word "may" in § 7735 is mandatory and not directory. The use of express words to indicate the discretionary and optional nature of the power of retention was made necessary by the mandatory meaning of the word "may" in the other provisions and is in itself statutory recognition of the mandatory duty of corporate trustees to invest only as authorized by the statute.
R. L. 1905, § 3040, is the present § 7735; § 3022 has been rearranged and rewritten as the present § 7714. We do not deem it necessary to discuss § 7738 further because it relates simply to the investment of accumulations and not to the primary duty of trustees to invest. It is sufficient to say that under that section it is the duty of a corporate trustee to invest accumulations in authorized securities.
5. The legislative history of this subject shows that it has been the policy of the statute to withhold from financial corporations the power to invest generally in corporate stocks. That power has never been given to trust companies. Only a restricted power to *Page 200 
invest in enumerated stocks has been granted to savings banks. G. S. 1878, vol. 2, c. 33, § 92; G. S. 1894, § 2562. L. 1903, c. 273, is the only instance in which any power to invest in corporate stocks has been given to trust companies. It authorized trust companies to invest in certain debenture stocks of a certain railroad. L. 1903, c. 273, is significant for at least two reasons. First, it is the only statute which authorizes corporate trustees to invest in any kind of stocks; and, secondly, its language is that it shall "be lawful" for any trust company to invest in such debenture railway stock. If corporate trustees had the power to invest in corporate stocks it would have been entirely unnecessary to enact that statute. The language and substance of the statute clearly indicate that the legislature acted upon the assumption that trust companies did not have the power to invest in corporate stock. It has been the policy to increase the restrictions upon the power to invest in corporate stock so that in 1905 the only power which savings banks had to invest in corporate stocks was that of the debenture railroad stocks referred to in L. 1903, c. 273. Even this power to invest in corporate stocks was entirely taken away by L. 1923, c. 421. Since 1923 no financial corporation has been authorized to invest in corporate stocks of any kind.
The legislature has always recognized the rule that trust companies have no power to invest except as specially authorized by statute. At least 17 laws, of which 15 have been subsequent to the revision of 1905, have been passed by the legislature dealing with the subject of authorized securities.[7] Most of these acts had to do with the enlargement of the list of authorized securities. It is inconceivable that the legislature would have asserted its power 17 times if that were unnecessary. It is absurd to require savings banks and corporate trustees to purchase authorized securities which comply with all the meticulous requirements of § 7714, as amended, and at the same time hold that they may in their discretion *Page 201 
ignore the statute and select investments which the statute plainly excludes.
The limited powers of corporate trustees has been recognized by other legislation. On at least two other occasions laws were passed which recognized the limited power of trust companies. Two years after L. 1883, c. 107, was passed, L. 1885, c. 3, was passed authorizing trust companies to engage in the title insurance business. In conferring trust powers on state banks, permissive language, the word "may," was used, the same as in § 7735. 2 Mason Minn. St. 1927, § 7663, subds. 4 and 7; 3 Mason Minn. St. 1936 Supp. § 7661-1. With this legislative background, negativing the idea that trust companies have power to invest in corporate stocks, it cannot now be asserted with plausibility that trust companies have that power. Bemis Bro. Bag Co. v. Wallace, 197 Minn. 216, 266 N.W. 690.
The generally accepted opinion and practical construction is that the power of investment of a corporate trustee, where the trust does not contain specific directions, does not include the right to invest trust funds in corporate stocks. This construction is in accord with our decision in St. Paul Trust Co. v. Strong, supra, and has long been accepted and acquiesced in with practical unanimity by the legislative and executive branches of the state government, the bar, and the public.[8]
There is a strong presumption that that which has never been done cannot by law be done at all. 6 Dunnell, Minn. Dig. (2 ed. Supps. 1932, 1934, 1937) § 8952.
6. It is suggested that the court has the power to allow and ought to instruct the trustee to invest in corporate stocks. The *Page 202 
answer, of course, is that the statute makes its own instructions. When a corporate trustee is named, the statute by that act is made a part of the trust. Corporate trustees are limited in their investments to afford reasonable assurance that the trust will be safely administered. St. Paul Trust Co. v. Strong, supra; Pratt v. Short, 79 N.Y. 437, 446,35 Am. R. 531. In Hopkins Federal S. L. Assn. v. Cleary, 296 U.S. 315,340, 56 S.Ct. 235, 242, 80 L. ed. 251, 100 A.L.R. 1403, speaking of a building and loan association incorporated under the laws of Wisconsin, what was said is very appropriate here:
"In the creation of corporations of this quasi-public order and in keeping them thereafter within the limits of their charters, the state is parens patriae, acting in a spirit of benevolence for the welfare of its citizens. Shareholders and creditors have assumed a relation to the business in the belief that the assets will be protected by all the power of the government against use for other ends than those stated in the charter. Aside from the direct interest of the state in the preservation of agencies established for the common good, there is thus the duty of the parens patriae to keep faith with those who have put their trust in the parental power."
Good faith requires that the trust be executed according to its terms — according to the statute. A statute is a command of the law, intended to be obeyed, else it would never have been enacted. Kipp v. Dawson, 31 Minn. 373, 17 N.W. 961,18 N.W. 96. That judges may disregard a statute has been disavowed by our decisions that judges should obey and comply with statutes, whether directory or mandatory, relating to the performance of their duties. Vogle v. Grace, 5 Minn. 232 (294); Wenger v. Wenger, 200 Minn. 436, 274 N.W. 517. Even though a court might refuse to set aside an act after it has been performed, a court will not decree its performance if the law does not authorize it. In Case v. Kelly, 133 U.S. 21, 28,10 S.Ct. 216, 220, 33 L. ed. 513, in denying the right of a receiver of a corporation to recover under an ultra vires
contract, *Page 203 
Mr. Justice Miller stated the duty of courts in the following language:
"* * * it is very clear that it [the court] will not make itself the active agent in behalf of the company in violating the law and enabling the company to do that which the law forbids."
In In re Muller's Will, 155 Misc. 748, 280 N.Y. S. 345, 349, the court said:
"Despite the broad jurisdiction over trusts now possessed by the Surrogate's Court, which is as comprehensive as that possessed by the former Chancellor, I know of no power in any court to disregard the command of the Legislature and to declare an investment to be lawful which the lawgivers have declared to be unlawful. Cruger v. Jones, 18 Barb. 467. If there are considerations which justify the change of the class of legal investments they should be addressed to the Legislature."
Courts will direct trustees to do what the law itself directs.
7. A national bank, when acting as a fiduciary, exercises the same powers as a corporate fiduciary organized under state law. The state law determines the extent of the powers of corporate fiduciaries whether organized under state or national law. National banks are authorized by 2 Mason Minn. St. 1927, §§ 7727, 7728, to exercise the same fiduciary powers as trust companies and other financial corporations, organized under state law, on a basis of absolute parity. A national bank, when acting as a fiduciary, must act in conformity to the laws of the state in which it is located. 7 Am. Jur., Banks, § 191, note 2; First Nat. Bank v. Fellows, 244 U.S. 416, 37 S.Ct. 734,61 L. ed. 1233, L.R.A. 1918C, 283, Ann. Cas. 1918D, 1169; Fidelity D. Co. v. Deposit Guaranty B. T. Co. 164 Miss. 286,144 So. 700, 85 A.L.R. 860; First Nat. Bank v. Weaver,225 Ala. 160, 142 So. 420, 88 A.L.R. 201; Ex parte Worcester County Nat. Bank, 279 U.S. 347, 49 S.Ct. 368, 73 L. ed. 733, 61 A.L.R. 987; 2 Zollmann, Banks Banking (Perm. ed.) p. 288, § 1094; annotation, 85 A.L.R. 864. *Page 204 
It has been suggested that national banks are authorized by the Federal Reserve Regulation,[9] adopted pursuant to12 USCA, § 248(k):[10] to exercise the same powers of investment, when acting as a fiduciary, as an individual trustee. We think this contention is untenable. The federal statute authorizes a national bank, to which the board of governors of the Federal Reserve System has given a permit, to act as a fiduciary the same as a state bank, trust company, or other competing corporation. Equality of right to national banks to act as a fiduciary is all that the statute provides. In First Nat. Bank v. Fellows, 244 U.S. 416, 426, 37 S.Ct. 734, 738,61 L. ed. 1233, L.R.A. 1918C, 283, Ann. Cas. 1918D, 1169, the Supreme Court of the United States stated that the general subject of regulating the business of fiduciaries is "peculiarly within state administrative control" and that the federal act does not have for its purpose the depriving of the states of this power but simply to place national banks on a parity with state corporations exercising fiduciary powers. In this respect the requirement is different from that with respect to the taxation of national banks. R. S. § 5219. In that situation the requirement is not to place national banks on a parity with state banking institutions, but it is to place the *Page 205 
moneyed capital of national banks upon an equality for purposes of taxation with competing moneyed capital in the states, whether owned by state banks or individuals. State v. First Nat. Bank, 164 Minn. 235, 204 N.W. 874, 205 N.W. 375, affirmed, 273 U.S. 561, 47 S.Ct. 468, 71 L. ed. 774.
The power of the board of governors of the Federal Reserve System to make regulations is, by the terms of12 USCA, § 248(k), confined to making regulations to enforce compliance with that statute, and the proper exercise of the powers therein granted to national banks. The regulation is not susceptible of the claimed construction. By its terms a national bank has the claimed power only where the trustee is clothed with discretion to invest funds by court order or where the state law permits a corporate fiduciary to exercise a discretion. The trustee in this case does not come within either alternative of the regulation. The petition alleges that the trustee was appointed by the district court and is administering the trust under its supervision. It is a court trust. The regulation itself provides that all investments shall be made under order of the court appointing the trustee. To permit the claimed powers which are not enjoyed by corporate trustees organized under state law would raise questions as to the validity of the rule as being in excess of the powers granted by the statute to the board of governors of the Federal Reserve System. American B. T. Co. v. Federal Reserve Bank,256 U.S. 350, 41 S.Ct. 499, 65 L. ed. 983, 25 A.L.R. 971; Wheeler v. Greene, 280 U.S. 49, 50 S.Ct. 21, 74 L. ed. 160; Campbell v. Chase Nat. Bank (D.C.) 5 F. Supp. 156.
Our conclusion is that it is the duty of a corporate trustee, in the absence of directions in the trust instrument, to invest trust funds in authorized securities as directed by statute; that in this respect the statute is exclusive and mandatory; and that a corporate trustee does not have power to invest trust funds in corporate stocks in the absence of specific directions to do so in the instrument creating the trust. *Page 206 
We appreciate the able briefs of amici curiae filed at our request, which have been very helpful in the consideration of this case.
Affirmed.
MR. JUSTICE STONE, on account of illness, took no part in the consideration or decision of this case.
[2] § 7735: "It may invest all moneys received by it in trust in authorized securities, and shall be responsible to the owner or cestui que trust for the validity, regularity, quality, value, and genuineness of such investments and securities so made, and for the safekeeping of the securities and evidences thereof. Whenever special directions are given in any order, judgment, decree, will, or other written instrument as to the particular manner or the particular class or kind of securities or property in which any investment shall be made, it shall follow such directions, and in such case it shall not be further responsible by reason of the performance of such trust. In all other cases it may invest the same in any of said authorized securities, using its best judgment in the selection thereof, and shall be responsible for their validity, regularity, quality, and value thereof at the time made, and for their safekeeping. It may, in its discretion, retain and continue any investment and security or securities coming into its possession in any fiduciary capacity."
[3] § 7714: "The term 'authorized securities' whenever used in the statutes and laws of this state shall be understood as referring to the following described securities in which the Trustees of any savings bank shall invest the money deposited therein, and in which a corporate Trustee may invest all moneys received by it in trust, but subject to the provisions of Section 7735, General Statutes 1923. Authorized securities shall be deemed to be securities which at the time of the purchase thereof are included in one or more of the following classes * * *."
[4] § 7738: "Any amount not less than one hundred dollars received by it as executor, administrator, guardian, or other trustee, or by order of court, not required for the purposes of such trust, or not to be accounted for within one year, it shall invest as soon as practicable in authorized securities either then held by it or specially procured by it; and the income, less its proper charges, shall become part of the trust estate, and the net accumulations thereon shall be likewise invested, accounted for, and allowed in the settlement of such trust."
[5] L. 1883, c. 107, § 9 — Sixth: "The directors of any such corporation shall have discretionary power to invest all monies received by it on deposit or in trust, in any such personal securities as are not hereinafter expressly prohibited; and it shall be held responsible to the owners or cestui que trust of such moneys for the validity, regularity, quality, value and genuineness of all such investments and securities at the time the said investments are so made, and for the safekeeping of the evidences and securities thereof. But if any special direction, agreement or trust is imposed upon, made or conferred in and by the order, judgment or decree of any court, or by the terms and conditions of any last will and testament, or other document, contract, deed, conveyance or other written instrument as to the particular manner in which, or the particular class or kind of securities, funds or property, whether real or personal, the same shall be invested in, then the said corporation shall follow and carry out such order, judgment, decree or other appointment, contract, deed, conveyance, or other written instrument. And in such case, such company shall not be liable or responsible for any loss, damage, or injury which may occur or be incurred by any person or cestui que trust by reason of its performance of such trust as aforesaid."
[6] Report of State Revision Commission, pp. 23, 24, of Index Revised Laws Minnesota 1905. The revisors state that, under the head of Corporations, of which the law of corporate trustees is a part, the law then in force has been retained, "gathering it from many existing provisions and writing together. This method saves a large amount of space, and leaves it easy to find the law governing the formation and organization of every class of corporations. Where several laws upon the same subject have been found, evidently enacted for the same purpose and differing only in phraseology, they have been combined and written once only. In all cases our purpose has been, without attempting to change the law in any essential particular, to arrange it logically, dispensing with unnecessary verbiage, which tends only to confusion. * * * Financial corporations, consisting of banks, savings banks, trust companies, and building and loan associations, have been placed together; and under general provisions have been written all matters common to them all, and such matters have been omitted in writing the special features of every such corporation. * * * In banks, savings banks, and trust companies, the existing statutes have been followed, with the combination and condensation before referred to, and changes of phraseology necessary to clearness."
[7] L. 1903, cc. 70 and 273; L. 1907, c. 468; L. 1913, cc. 124 and 506; L. 1917, cc. 88, 234, 431; L. 1919, c. 181; L. 1923, c. 421; L. 1927, cc. 368, 422; L. 1931, c. 296; L. 1933, cc. 256, 307, 368; Ex. Sess. L. 1933-1934, c. 50.
[8] Mr. William J. Stevenson, Vice-President and Trust Officer of the First National Bank Trust Company of Minneapolis, writes in a brochure entitled, Legal Forms for Wills and Trusts
(3 ed.) page 17: "In the absence of any directions as to the class of investments, a Trust Company is required to invest Trust Funds in 'authorized securities' as defined by Sec. 7714, Mason's Minn. St. 1927, as amended."
In 65 Trust Companies, p. 446 (Oct. 1937), Mr. Louis S. Headley, Vice-President of the First Trust Company of St. Paul, writes: "In Minnesota an authorized investment statute which has always been assumed to be mandatory, has been held by several lower courts to be merely permissive."
[9] Regulation F, Series 1936, Section 10(b), provides in part: "A national bank acting in any fiduciary capacity * * * shall * * * make all investments of funds received or held by it in trust under an order of that court, and copies of all such orders shall be filed and preserved with the records of the trust department of the bank. If the court order vests a discretion in the bank to invest funds received or held by it in trust, or if, under the laws of the State in which the bank is acting, corporate fiduciaries appointed by the court are permitted to exercise such a discretion, the bank, with the approval of the trust investment committee, shall invest such funds in any investments in which corporate or individual fiduciaries in the State in which the bank is acting may lawfully invest."
[10] 12 USCA, § 248(k): Permitting national banks to act as trustees, etc. "To grant by special permit to national banks applying therefor, when not in contravention of State or local law, the right to act as trustee, * * * or in any other fiduciary capacity in which State banks, trust companies, or other corporations which come into competition with national banks are permitted to act under the laws of the State in which the national bank is located. * * *"